MÉNDEZ, PLAINTIFF AND RESPONDENT, v. MARTÍNEZ, DEFEND-
ANT AND APPELLANT.

## APPEAL from the District Court of Aguadilla in an Action of Filiation.

### No. 1016.—Decided July 30, 1914.

NATURAL CHILDREN—ACTION OF FILIATION.—The registration of the births of the
minor plaintiffs as the natural children of their mother does not prevent
their bringing an action of filiation as the natural children of the defendant's
ancestor.

ID.—ACTION OF FILIATION.—Both section 199 of the Revised Civil Code, which
was repealed by Act No. 73 of March 9, 1911, and section 194, as amended
in section 1 of said act, authorize an action of filiation under certain restric-
tions after the death of the putative father; and this being the case, it is
obvious that the action lies against the succession or successor in interest of
the deceased father.

ID.—ACTION OF FILIATION—EVIDENCE—COMPLAINT.—The law does not require it,
nor is it necessary to allege in detail in the complaint the facts upon which
the action is based, because such details, if they are necessary, may be
brought out in the evidence at the trial.

ID.—ACTION OF FILIATION.—The right of a natural child to acknowledgment is
governed by the law in force at the time of his birth.

ID.—ACTION OF FILIATION—EVIDENCE.—Proof of acknowledgment must be strong
and convincing.

ID.—ACTION OF FILIATION—SUPPORT OF MOTHER AND CHILDREN.—The relations
between the putative father and the mother of the plaintiffs, the furnishing
of funds by the former to the latter for the support of herself and her
children and the fact that he called the plaintiffs his children at times, are
not alone sufficient to prove their acknowledgment as natural children when
said facts can be explained without admitting the paternity and may be
the result of benevolent sentiments and affection entertained for the mother
and her children.

ID.—ACTION OF FILIATION.—In the case at bar it was held that no authentic
instrument executed by the father expressly recognizing the plaintiffs as his
children had been introduced at the trial, and that it was not proven that
the mother lived in concubinage with the father during her pregnancy and
at the time of the birth of the children, or that the children had been in
possession of the status of natural children, for which there must be a con-
tinuation of facts showing the plaintiffs to have had an undisturbed relation
with the putative father as his natural children.

ID.—ACTION OF FILIATION—EVIDENCE.—When the case is of children born on dif-
ferent dates whose right to acknowledgment is governed by different laws,
it is necessary to show specifically by the evidence the acts of acknowledg-
ment relating to each one of them and the dates on which such acts were
performed.

ID.—ACTION OF FILIATION—EVIDENCE.—One of the witnesses for the plaintiffs having testified that the handwriting of the letters offered in evidence appeared to be that of the putative father although the signatures did not, while another witness testified that the handwriting and the signatures of the letters were those of the putative father, who in signing public documents made another rubric and in signing letters made a flourish, this cannot be held sufficient to establish the genuineness of the said letters.

ID.—ACTION OF FILIATION—PROOF OF PATERNITY.—Taking into account the spirit of Act No. 73 of March 9, 1911, tending to require more convincing proof of the filiation than what was formerly required by section 189 of the Civil Code, it must be deduced that the proof of paternity required by said act must be such as to be equivalent to that shown by a genuine document of express acknowledgment, by the continuous possession of the status of natural child and by the concubinage of the mother with the father during her pregnancy and at the time of the birth of the child.

The facts are stated in the opinion.

The appellant filed a brief *pro se.*

*Mr. Juan B. Soto* for the respondent.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On November 25, 1912, Cecilia Méndez, as mother and legal representative of her minor children, Pedro Angel and Laura María Méndez, filed a verified complaint against Víctor P. Martínez y González, as heir of Víctor Martínez y Martínez, in the District Court for the Judicial District of Aguadilla, praying for a judgment to the effect that the said minors are the acknowledged natural children of Víctor Martínez y Martínez with the rights thereunto appertaining according to the provisions of the Civil Code applicable to the case, and that the said judgment be recorded in the civil registry on the margin of the records of the births of Pedro Angel and Laura María.

The fundamental allegations of the complaint are as follows:

(*a*) That Pedro Angel and Laura María were born in the town of San Sebastián on November 22, 1909, and November 4, 1911, respectively, and were registered in the civil registry as the natural children of Cecilia Méndez.

(*b*) That Pedro Angel and Laura María are the issue of· the amorous relations between the plaintiff and Víctor Martínez y Martínez, with whom she lived in concubinage under the same roof for several years.

(*c*) That at the time of the conception and birth of Pedro Angel and Laura María, the plaintiff and Víctor Martínez y Martínez had legal capacity to contract matrimony without any impediment, the plaintiff being single and Martínez being a widower.

(*d*) That the sexual relations between the plaintiff and Víctor Martínez y Martínez were continuous; that he lavished upon Pedro Angel and Laura María his most tender affection and solicitous care, treating them as his children and calling them so both privately and publicly; that the said minors have been in the continuous possession of the status and right of natural children of their father, Víctor Martínez, by reason of such direct acts of the father as living in the same home with them, providing them and their mother with sustenance during their infancy and supplying them with clothing and other necessaries of life.

(*e*) That Víctor Martínez y Martínez died in San Sebastián on August 26, 1912, leaving as his lawful heir his son, Víctor P. Martínez y González, ·the offspring of his marriage with Segunda González, who died in Mayagüez on May 4, 1908.

The defendant demurred to the complaint on the ground that the facts alleged therein did not constitute a cause of action, which demurrer was overruled by a ruling of April 9, 1913, whereupon the defendant answered the complaint denying the fundamental allegations thereof, except as to the death and widowhood of Víctor Martínez y Martínez, alleging besides, as new matter, other facts tending to disprove the allegations in support of the acknowledgment prayed for.

The trial having been had on June 16, 1913, the court rendered judgment, which was entered on July 3, following, sustaining the complaint and decreeing in consequence that

the minors Pedro Angel and Laura María are acknowledged natural children of Víctor Martínez y Martínez with the right to bear his surname and to inherit from him in the proportion fixed by the Civil Code now in force, as amended in the part relating to natural children, and with all other rights which the law grants to acknowledged natural children, with costs against the defendant, and that the said judgment, when final, be communicated to the official in charge of the Civil Registry of the town of San Sebastián for entry on the margins of the records of the births of the said minors. From that judgment the defendant took the present appeal to this court.

As a first ground of appeal, the appellant alleges that the lower court erred in overruling, by its ruling of April 9, 1913, the demurrer that the facts did not constitute a cause of action.

The legal grounds on which the said demurrer is based are the following:

1. That the bringing of the action for acknowledgment was premature because the presumed natural father died on August 26, 1912, and the complaint was filed in November of the same year, it resulting that the said action was brought before the expiration of a year after the death of Víctor Martínez.

2. That Pedro Angel and Laura María, who were born on November 22, 1909, and November 4, 1911, respectively, having been registered in the Civil Registry of San Sebastián as the natural children of Cecilia Méndez, their filiation cannot be changed to that of Víctor Martínez y Martínez, for they can have no other civil status than that stated in the registry.

3. That only the father or the mother, and not the succession of the parents, can acknowledge their children personally, since this is a purely personal act.

4. That the complaint fails to allege the detailed particulars of the facts showing the filiation, namely, the time dur-

ing which Cecilia Méndez and Víctor Martínez lived together
in concubinage, the duration of their sexual relations, and
whether the husband of Segunda González and father of the
defendant is the same person who lived in concubinage and
sustained sexual relations with Cecilia Méndez for many
years, in order that a conclusion may be reached as to whether
the said relations were adulterous or not.

Although the grounds alleged in support of the demurrer
seem to us to be frivolous, we will dispose of them briefly
in the order in which they are presented. Section 194 of
our Civil Code, as amended by section 1 of Act No. 73 of
March 9, 1911, in providing that an action for the acknowl-
edgment of natural children can be brought only during the
life of the presumptive parents or one year after their death,
except in certain cases, fixed the said period of one year for
bringing such action, but did not make it necessary for that
reason to await the expiration of that year, and this is par-
ticularly pertinent in the present case, it being a case of
minors, in which, according to one of the said exceptions,
they may bring the action before the lapse of the first four
years of their having attained their majority. The record-
ing of the births of the minor plaintiffs in the civil registry
as natural children of Cecilia Méndez is no bar to their bring-
ing an action for acknowledgment as natural children of
Víctor Martínez in order that when the acknowledgment is
obtained that fact may be entered also in the registry in
the manner provided for by Act No. 61 of March 9, 1911,
relating to the matter. Both section 199 of the Revised
Civil Code, which was repealed by Act No. 73 of March 9,
1911, and section 194, as amended by section 1 of the said
Act, authorize an action for acknowledgment under certain
restrictions after the death of the presumed father; and,
this being the case, it is obvious that the action lies against
the heir or successor in interest of the deceased father. It
is unnecessary to allege in detail in the complaint the facts
determining the cause of action, nor does the law so require,

for these details, if necessary, can be brought out in the evidence at the trial. *Ramos* v. *Succession of Cabán,* 18 P. R. R., 515.

Therefore, the lower court did not err in its ruling of April 9, 1913, overruling the defendant's demurrer to the complaint.

The appellant also alleges that the lower court erred in weighing the evidence relating to the acknowledgment of Pedro Angel and Laura María.

The documentary evidence of the plaintiff relating to said acknowledgment consists of twenty-three letters written by V. Martínez to Cecilia, eleven with and twelve without dates. The eleven were dated as follows: February 8, 1889 (possibly 1898); October 19, November 13, November 26, December 16 and December 22, 1898; December 10, 1900; January 4 and November 4, 1901; June 10, 1903, and April 6, 1907.

In the letter of February 8, 1889 (or 1898), V. Martínez writes to Cecilia acknowledging the receipt of a letter by which he learns that she and the children are well and telling her that he is sending her half a dozen pairs of stockings and an order for money. He concludes with loving regards.

In the letter of October 19, 1898, V. Martínez tells Cecilia that he was very sorry he had to leave without seeing her; that he knew through Lorenzo that she was well; that he hopes she will always be zealous of her honor and decorum; that she should place Paco at school with Ramón Vázquez; that he sent her $40, and that if she wished to write him she should hand the letter to Lorenzo. He concludes with loving regards to her and the children.

In the letter of November 13, 1898, V. Martínez writes to Cecilia acknowledging the receipt of a letter of the 25th of the previous month and tells her that he knew through Lorenzo that she was out of danger; that he always did what he could to aid her; that he had instructed her godfather to hand her a dollar daily; that he sent her $40 by an em-

ployee of Laurnaga, and that she should educate the children.
He concludes with an embrace and loving regards.

In his letter of November 26, 1898, V. Martínez writes
to Cecilia acknowledging the receipt of a letter dated the
15th of the said month and says that he had learned from
Carolina and the godfather that the baby had been sick.
That Tuesday was her birthday and although he could not
see her he remembered her and had bought her a present
and that what he sent her was for the purchase of such
things as she might need. That he did not want her to
endure hardships; that she should send Paquito and María
to school; that he would soon visit her and that while he
lived he would take care of her. He concludes with love to
the children and an embrace for her.

In his letter of December 16, 1898, V. Martínez writes
to Cecilia that he has not received a letter for some days,
and that only through Lorenzo and Lupe had he heard of
her and learned that the children had whooping-cough. He
tells her of the purchase of a wrap and of the sending of
dresses for her and the children. He hopes that Paquito
has not failed to attend school so as to fit himself for taking
care of her interests in the future. He concludes with pro-
testations of affection.

In his letter of December 22, 1898, V. Martínez writes
to Cecilia that he has learned of the serious illness of the
little girl and prays God that his fears may not be realized;
that he feels for her sufferings; that she should do every-
thing possible to cure the child; that Cancio will visit her as
often as may be necessary; that if she needs anything to
advise him, and that he hopes to hear how the child is get-
ting on. He concludes with regards and embraces.

In his letter of December 10, 1900, he informs her that
he has sent two bank notes of $5 each and tells her she may
offer 900 provincial dollars for Basilio's land, payable in
three instalments. He concludes with remembrances for all
and protestations of love.

In his letter of January 4, 1901, V. Martínez advises Cecilia about the management of properties and sends felicitations.

In his letter of November 4, 1901, V. Martínez writes Cecilia acknowledging the receipt of another letter and tells her that he has not seen José Cabrero for the purpose of sending a hat and shoes. He encloses two bank notes, one for $10 and the other for $5, and concludes with remembrances for all and protestations of affection.

In his letter of June 10, 1903, V. Martínez informs Cecilia that he will breakfast with her on the following day and that he has sent her a small box. He concludes with protestations of love.

In the letter of April 6, 1907, which is unaddressed and written by one Pascasio Martínez to his beloved parents, V. Martínez writes some lines to Cecilia on the back stating that on his arrival at the town he met another godfather, adding that he was informed in a letter which he had received that the child was very happy. He concludes with expressions of love.

We will refrain from quoting the contents of the undated letters tending to show that Víctor Martínez maintained sexual relations with Cecilia and that Martínez protected Cecilia and her children and interested himself in their health and education. In none of those letters are the children Pedro Angel and Laura María mentioned.

The oral evidence of the plaintiff as to the acknowledgment under consideration consists of the testimony of several witnesses who testified on June 16, 1913, a synopsis of which testimony is as follows:

Witness Pedro Ríos Peña at first testified that from his place, which is about eight meters distant, he sometimes saw Víctor Martínez enter the house of Cecilia Méndez, but afterwards he said and repeated that he never saw Víctor Martínez inside the house of Cecilia Méndez, although he used to see him alight from the carriage and stop in front of the

house going towards the entrance. About two years ago Víctor Martínez used to go to his place, although not often, to buy candy for Cecilia Méndez and her children, he instructing the witness at times to send it to Cecilia Méndez and the children calling for it at other times. Sometimes the children, sometimes the servant, and at other times a boy, took the candy to Cecilia Méndez. Víctor Martínez carried an account with the witness for candies, boxes of crackers, etc., paying for them the following day when he did not pay cash. He knows only that Martínez used to go to the house of Cecilia Méndez and carry candies which he had bought at the witness's store and that he used to send them also, which he knows because the servant used to take along the child Pedro Angel, and he knows that this was his name because the servant used to call him so. He is ignorant of the kind of relations that existed between Víctor Martínez and Cecilia Méndez and her children. Víctor Martínez did not tell him that he had children called Pedro Angel and Laura María or that he had a concubine.

Gerónimo Méndez Jiménez testified that he frequently saw Víctor Martínez in the house of Cecilia Méndez, whom he treated as his own wife and that the last time he saw him in Cecilia's house was about two years ago. That once, about four years ago, at the request of Víctor Martínez, he took her a five-dollar bank note. On several occasions he saw Víctor Martínez arrive at the house of Cecilia Méndez, but only once saw him inside, which was in the year 1910, when Víctor and Cecilia were each sitting on a rocking-chair, Víctor having the child Pedro Angel on his lap. He knows only that Víctor Martínez used to call at the house of Cecilia Méndez, but does not know for what purpose. Víctor Martínez and Cecilia Méndez did not live together in the same house.

Joaquín Cardona testified that he was a carpenter whom Víctor Martínez used to employ to work at his house, and as the witness lived in a house adjoining that of Cecilia, he

often saw Martínez in her house. Martínez frequently sent for him to do some work at the said house and then he would sit on one rocking-chair and Víctor Martínez on another with Pedro Angel, whom he caressed and called "my little boy." Martínez frequently used to stay in the house of Cecilia Méndez. Sometimes he arrived on Friday and left on Sunday. Martínez treated Cecilia as his own wife, for he used to say, "Bring the little boy for me to see." This was three years ago, and, moreover, he used to send money for her and her children. During the last year and a half he has seen nothing between Cecilia Méndez and Víctor Martínez. When Cecilia Méndez lived in Manuel Joaquín Cabrero Street the witness also resided in the same street, their houses being separated by an alley two yards wide, and later Cecilia went to live in a house on Miraflores Street which Víctor Martínez bought for her. She sold this house and went to Calabazas, and since that time the witness neither saw nor learned anything about Martínez and Cecilia. When Martínez paid him for his work he used to give him money and tell him to take what was due and give what was left to Cecilia for her children, Pedro Angel and Laura María, who were Víctor Martínez's children. He knows they are Víctor Martínez's children because he believes that when a man keeps an honest woman like Cecilia, whose home Martínez used to visit frequently, breakfasting and remaining in the same house, that fact would show apparently that she and her children bore some relation to him. Víctor Martínez and Cecilia Méndez did not live under the same roof during the years 1908 to 1912. While the witness was working on the house of Cecilia Méndez, Víctor Martínez used to visit it and he noticed that he used to call the children Pedro Angel and Laura María and kiss and caress them. Martínez told him that they were his children. Martínez did not tell him that Pedro Angel was his child, but said so to the boy, whom he called "my son." That everything the witness had testified to occurred about three years ago, but he is unable to state

precisely the day, the week, or the month. Besides Pedro Angel and Laura María, Cecilia Méndez has two children named Paco and Llullo and some others. He knows that Pedro Angel and Laura María are the children of Cecilia Méndez, but does not know that they are the children of Víctor Martínez.

Juan Rodríguez Ramos testified that he saw Víctor Martínez on many occasions at the house of Cecilia Méndez. When Martínez arrived he used to get out of the carriage, go to the parlor, sit down on the rocking-chair, immediately inquire for the children, take Pedro Angel on his lap, pass his hand over the child's head and face, and pass him over to Cecilia. On arrival he would say, "Cecilia, where are the children? Is Pedro Angel well?" While he had the children on his lap he would say, "My child, my child." He never heard Víctor Martínez bless them. Martínez furnished means to Cecilia to support herself and her children. Several times when Martínez met the witness he referred to Pedro Angel and Laura María and said, "And how are the children getting on?" He saw Víctor Martínez caress the children only once, which was about three years ago, more or less. The child which he saw Martínez caress was the little boy whom Cecilia brought him.

Sixta Torres testified that she attended Cecilia Méndez at the birth of the children Pedro Angel and Laura María, at the request of Víctor Martínez who paid her $6 on each occasion. Martínez loved those children as his own. When he used to see the little girl he would give her his blessing, saying, "My little daughter, may God bless and be with you," and he did the same as to Pedro Angel. Martínez was in the habit of going to Cecilia's house on Sundays and leaving on Monday or Tuesday. On other occasions he would arrive on Thursday and leave on Monday. He used to go into the house as though he were the owner, slept in a room and took his meals there. Shortly after Cecilia had given birth she slept in one room and they placed a bed in another

room for Víctor Martínez, and when she was well both of
them slept in his room, the baby in the cradle and the witness
in a room near the child. Cecilia gave birth to Pedro Angel
three or four years ago and to Laura María about two years
ago. Víctor Martínez furnished the necessaries for the sup-
port of Cecilia and her children. She heard Víctor Martínez
call them his children some hundred thousand times in the
following manner: He would catch up Pedro Angel, kiss
him, stroke his head, and say to Cecilia, "Take great care
of this child, for, if God will, we will educate him." He
acted in the same way towards Laura María. She does not
remember having told any person that Víctor Martínez did
not call upon her to assist at the births. She cannot recall
having said that owing to the eccentric character of Víctor
Martínez he had not caressed the children. She does not
remember having said that Cecilia Méndez paid for her ser-
vices at the birth of the children, nor can she recall having
stated that she did not know who was the father of those
children, although she stated that the only person whom she
talked to about the matter was Bautista Medina.

Irene Hernández testified that she was employed in the
house of Cecilia Méndez and paid by Víctor Martínez. Mar-
tínez used to visit the house as the owner, take the children
on his lap, caress them, treat them as his children, and bless
them, after which he seated himself on a rocking-chair or
went to the bed of Cecilia Méndez and lay down. Martínez
treated Pedro Angel and Laura María as his children. Víc-
tor Martínez told her that they were his children. She does
not remember the date, but it would be about three or four
years as to Pedro Angel, and Víctor Martínez said nothing as
to Laura María. Martínez furnished money for the support
of the children Pedro Angel and Laura María.

Ramón Novoa Martínez testified that about two years ago
Víctor Martínez had twice furnished money to Cecilia to pro-
vide for her and her children's needs. He never made any
statements regarding the children Pedro Angel and Laura

María except those which fathers make regarding their children. He saw Martínez go into the house of Cecilia Méndez only twice. He never saw Cecilia Méndez and Víctor Martínez on the street with the children.

Gerardo Pérez testified that on December 6, 1910, Víctor Martínez bought a washstand, a mirror, and four sheets at his store for Cecilia Méndez, instructed him to send the same to the house of Cecilia Méndez and paid the amount of the purchase. He does not remember any other occasion on which Víctor Martínez bought anything for Cecilia Méndez and does not know the nature of the relations existing between them.

Cecilia Méndez testified that she maintained relations with Víctor Martínez for a period of four or five years and that Martínez visited her three or four times nearly every week. She lived in marital relations with Martnez and as a result bore the children named Pedro Angel and Laura María. Martínez furnished everything necessary for her support. The little boy knew Martínez when he arrived at the house and used to say, "Mamma, there is papa," and Martínez blessed and caressed him. Sixta Torres attended her at the births of her children. Martínez used to give her $8 every eight days, which she received through Pedro Ríos. She does not know how to read or write, but often used to receive letters from Víctor Martínez and other persons read them to her and wrote her replies.

The oral evidence for the defendant is as follows:

José Diepa Pérez testified that he has done clerical work for Víctor Martínez and his son, the defendant, on many occasions, and was with them for a period of four or five years, having lived in the ward of Hato Arriba with them for some time. That he never saw there the woman called Cecilia Méndez or the children Pedro Angel and Laura María. He never knew that Víctor Martínez had any concubine and, considering his character, he does not think it possible that he maintained illicit relations with any woman. He does not know that Víctor Martínez sent sums of money to his sup-

posed children referred to. Martínez was a man of a retir-
ing and very serious character and he never observed him to
be communicative with anyone, for he rarely spoke. The
witness examined and filed the correspondence of Víctor Mar-
tínez without finding any letter from Cecilia Méndez and he
never wrote a letter to Cecilia Méndez to be signed by Víctor
Martínez.

Emiliano Beauchamps testified that from 1908 to 1912 he
lived in San Sebastián, ward of Hato Arriba, as overseer for
Víctor Martínez and in the same room with him. During that
time he saw no one named Cecilia Méndez enter or live in the
house. Víctor Martínez was a man of very serious character
and the witness never saw any woman cross the threshold
of his house, not even the cook. He never saw the children
Pedro Angel and Laura María there. Víctor Martínez did
not send money to Cecilia Méndez by the witness and never
told him during the conversations they had at night that he
had any illegitimate children. He knew of no concubine of
his and did not believe that he would be capable of keeping
one. There is no account in the books of the plantation with
Joaquín Cardona, and he received no instructions as pay-
master of the plantation to pay any money to Cecilia Méndez
or to Joaquín Cardona.

Juan Bautista Medina testified that he lived in San Se-
bastián from 1908 to 1912 and knew Víctor Martínez and
Cecilia Méndez and also her children Pedro Angel and Laura
María. He knew of no amorous relations maintained by
Víctor Martínez either while married or while a widower,
and his serious character was contrary to such indulgence.
Among the different commissions entrusted to him by Víctor
Martínez, none related to Cecilia Méndez or to her children.
About June 1, 1913, Sixta Torres told him in a conversation
that although she had attended Cecilia Méndez when she gave
birth to Pedro Angel and Laura María, Cecilia had sent for
her and she did not know that Víctor Martínez was the father
of those children, for if she had known it she would have en-

tered the same in the civil registry. These statements were made spontaneously by Sixta Torres in answer to questions which the witness asked her.

Considering the weight of the foregoing evidence in the light of the law and jurisprudence applicable to the case, let us see now whether the acknowledgment of Pedro Angel and Laura María as the natural children of Víctor Martínez, defendant's ancestor, has been proved sufficiently.

The civil registry certificates introduced at the trial show that Pedro Angel was born on November 22, 1909, and Laura María on November 4, 1911. The right of Pedro Angel to acknowledgment should be governed by section 189 of the Revised Civil Code, while the same right of the child Laura María should be governed by section 193, as amended by section 1 of Act No. 73 of March 9, 1911.

Section 189 of the Revised Civil Code reads as follows:

"Section 189.—A father is obliged to recognize his illegitimate child in the following cases:

"1. Where there be an authentic statement in writing made by him expressly recognizing its paternity.

"2. When publicly or privately he has shown that it is his child, or has called it as such in conversation, or looks after its education and maintenance.

"3. When the mother was known to have lived in concubinage with the father during the (her) pregnancy or (at the time of the) birth of the child, or when the child was born while his parents were *engaged to be married* (sustaining sexual relations)."

The section above transcribed was in force until the approval of Act No. 73 of March 9, 1911, section 1 of which amended section 193 of the code to read, in its pertinent part, as follows:

"Section 193.—   *   *   *

"The father is obliged to recognize the natural child:

"1. When there exists an indubitable statement in writing of the father wherein he expressly acknowledges his paternity.

"2. Where the child has uninterruptedly enjoyed the condition as of a natural child of the defendant father justified by acts of the same father or of his family.

"3. When the mother was known to have lived in concubinage with the father, both during her pregnancy and at the time of the birth of the child.

"4. When the child may present any authentic evidence of his paternity."

\*          \*          \*          \*          \*          \*          \*

The proof of filiation must be strong and convincing. *Negueruela et al.* v. *Samohano et al.*, 16 P. R. R., 658.

In the present case the evidence of the plaintiff is far from being strong and convincing.

There was not offered in evidence at the trial any authentic statement in writing of Víctor Martínez expressly acknowledging Pedro Angel and Laura María as his children. Nor is there any evidence that Cecilia Méndez lived in concubinage with Martínez during her pregnancy and at the time of the birth of the said children or that they have been in possession of the status of natural children of Víctor Martínez, for the evidence does not bring out a continuation of acts which would show the said children as in the uninterrupted relation of natural children of Martínez. The testimony of the witnesses is vague and uncertain on this point.

Even if it should be admitted on the strength of the testimony of some of the witnesses that Víctor Martínez sustained sexual relations with Cecilia Méndez and furnished her means for her own support and for that of her children, Pedro Angel and Laura María, and caressed them and sometimes called them his children, particularly Pedro Angel, that alone would not lead us to the conclusion that Pedro Angel and Laura María were the natural children of Víctor Martínez and were considered by him as such. The conduct of Víctor Martínez towards Cecilia Méndez and her children may be explained without necessarily admitting his paternity, and may have been the result of his feelings of benevolence

and affection for Cecilia and her family, especially when we take into account the contents of some of the letters which the plaintiff offered in evidence which show that long prior to the birth of Pedro Angel and Laura María, Martínez displayed an interest in the other children of Cecilia and was solicitous for their health and education, and besides helping her, promised to take care of her while he lived. Some of the witnesses contradicted themselves on the witness stand. Others were not asked to explain their statements so as to establish their credibility, as in the case of Sixta Torres when she testified that Víctor Martínez called Pedro Angel and Laura Maria his children a hundred thousand times; and what is still more important, this being a case of two children claiming acknowledgment of their filiation, which acknowledgment is governed by different laws, the acts of acknowledgment in each case and the dates on which they were performed have not been clearly determined.

The genuineness of the twenty-three letters introduced in evidence by the plaintiff as prooof of the illicit relations between Víctor Martínez and Cecilia Méndez cannot be admitted, for these letters were shown to plaintiff's witness, Ramón F. Martínez, for identification after he had testified that he knew the handwriting and signature of Martínez, and he stated that the handwriting resembled that of Martínez, but that the signature did not. Another witness for the plaintiff, Aureo Antonio Sánchez, after testifying that he was the filing clerk of Notary Carlos Franco Soto and that there were many documents in the archives executed by Víctor Martínez y Martínez which he had seen and therefore knew his handwriting, stated that the handwriting and the signatures of the letters were those of Víctor Martínez, who was accustomed to add a flourish in signing public instruments and a stroke in signing letters. No documents containing the unquestioned handwriting and signature of Víctor Martínez were presented to the court for the purpose of comparing the same with the letters in question and establishing through

the testimony of competent witnesses the identity or similarity of the handwriting and signature of Martínez in the said letters, therefore their authenticity was not proved satisfactorily.

But the fact is that supposing, while not admitting, the authenticity of the letters in question, they would show that Martínez maintained relations with Cecilia Méndez from February 8, 1898, the date of the first letter, to April 6, 1907, the date of the last letter, or for a period of nine years. And if it is concluded that the letters without date were written subsequently to the year 1907, or during the period of the conception and birth of Pedro Angel and Laura María, then the relations sustained by Martínez with Cecilia by means of written correspondence would cover a much longer period than that.

The foregoing, under the hypothesis of the authenticity of the letters, is in open conflict with the sworn testimony of Cecilia Méndez to the effect that she maintained relations with Martínez for a period of four or five years. Nor has she seen fit to prove that the undated letters refer to the period during which the children Pedro Angel and Laura María were conceived or born, or to introduce any witness or witnesses through whose agency she received the letters or the person who, she alleges, read them to her.

Furthermore, Cecilia Méndez testified that Martínez furnished her $8 every eight days, which she received through Pedro Ríos, and although she introduced Pedro Ríos as a witness she did not attempt to corroborate her testimony on this point by interrogating Ríos thereon. Ríos testified, contradicting the statements of Cecilia to a certain extent, that Martínez used to buy confections for her and her children and carried an account with the witness for the same, buying them on one day and paying for them on the next or else paying cash, and made no reference to an account for the $8 which Cecilia used to receive through him every eight days.

The veracity of witness Sixta Torres was attacked by defendant's witness Juan Bautista Medina, to whom she had made statements previously contrary to those she made at the trial, which statements Sixta did not deny categorically, for she only said that she did not remember them although she admitted that she had talked with Medina.

As already stated, the right of Pedro Angel is governed by section 189 of the Revised Civil Code, which was in force at the time of his birth, and that of Laura María by section 193, as amended by section 1 of Act No. 73 of March 9, 1911, which act went into effect before she was born, therefore the plaintiff should have taken into account the difference between the provisions of the two sections in introducing the evidence relied on to establish the filiation sought.

We repeat that there is no strong and convincing proof of the acknowledgment of Pedro Angel and Laura María.

The lack of evidence in the case of Laura María is much more notable than in that of Pedro Angel. Not only are the first three cases of section 193, as amended by section 1 of Act No. 73 of March 9, 1911, not applicable, but also the fourth ;case is not, for no authentic evidence of the paternity of Víctor Martínez was presented. The said section does not define what authentic evidence is referred to, but we can well deduce from the spirit of the act tending to require more convincing proof of filiation than was required formerly by section 189, and by the principle *noscitur a sociis,* that the said authentic evidence must be such as may be considered equal to that of an authentic written statement of express acknowledgment, continuous possession of the status of natural child and concubinage of the mother with the father during her pregnancy and at the time of the birth of the child.

It may be that in a new trial strong and convincing evidence of the filiation of Pedro Angel and Laura María may be introduced. That which was introduced at the former trial does not satisfy us.

Several exceptions were taken at the trial by the defendant-appellant and these exceptions were alleged also in support of a reversal of the judgment appealed from, but we think it unnecessary to examine the same in view of the fact that the judgment will be reversed on the error in weighing the evidence.

The judgment appealed from should be reversed and the case remanded for a new trial.

> *Judgment reversed and case remanded for a new trial.*

Justices Wolf, del Toro, and Aldrey concurred.

Mr. Justice Hutchison took no part in the decision of this case.